UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTIE C. MCCLURG,

Plaintiff,

vs.                                                                    Case No. 8:04-CV-2680-T-27TBM

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation submitted by the Magistrate

Judge (Dkt. 48) recommending that Defendant's Motion for Summary Judgment (Dkt. 28) be

granted and that Plaintiff's Motion for Summary Judgment (Dkt. 35) be denied. Plaintiff has filed

objections to the Report and Recommendation (Dkt. 49), to which Defendant has not responded.

### *Background Facts*

As set forth more fully in the Report and Recommendation, this case arises from the death

of Douglas McClurg from a self-inflicted gunshot wound at a hunting camp in November 2002.

Plaintiff, Mr. McClurg's former wife, filed a claim for benefits under Mr. McClurg's Accidental

Death & Dismemberment Policy. Defendant denied this claim, finding that Mr. McClurg's death

was not an "accident" under the Policy, and even if it were, coverage was excluded because Mr.

McClurg was intoxicated at the time of his death. (Dkt. 35-6, Exh. E).

### *Standard of Review*

The District Court is required to "make a *de novo* determination of those portions of the

magistrate's report or . . . recommendation to which objection is made." 28 U.S.C. § 636(b)(1). The District Court may "accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C).

### *Discussion*

The Court has conducted a *de novo* review of the Report and Recommendation and finds that the Magistrate Judge's conclusions should be adopted in full.

Plaintiff argues in its objections that the Magistrate Judge misapplied *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990) when assessing whether Mr. McClurg's death was a covered accident under the policy. Because "accidental" is not defined in the plan, the Magistrate Judge correctly applied the two-prong analysis adopted in *Wickman* in determining whether Mr. McClurg's death was an "accident." The Eleventh Circuit has approved of *Wickman*, albeit in dicta, stating that the First Circuit was on "eminently sound ground" in focusing on a person's objectively reasonable expectations when a policy's definition of "accident" is otherwise vague. *Buce v. Allianz Life. Ins. Co.*, 247 F.3d 1133, 1146-47 (11th Cir. 2001) (finding that the federal common law in *Wickman* did not apply because the policy expressly stated that it was to be interpreted under Georgia law).

Plaintiff's contention that the Magistrate did not apply *Wickman's* "subjective" prong is belied by the Magistrate Judge's express findings and thorough analysis. (Dkt. 48 at 19). In her objections, Plaintiff stresses that *Wickman's* objective inquiry focuses on "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as *highly likely* to occur as a result of the insured's intentional conduct." *Id.* at 1088. The correct focus, as applied by the Magistrate Judge, is "on the objectively reasonable expectations of a person in the

perilous situation that the decedent had placed himself in." *Buce*, 247 F.3d at 1246.  Plaintiff argues

that there is no basis for concluding that a person who had ingested alcohol would expect to die as

a result of loading hunting equipment into his vehicle.  As the Magistrate Judge noted, however, Mr.

McClurg, who was legally intoxicated under any measure, was in the process of placing a loaded

rifle into its soft case with the safety off and with the barrel pointing at his chest.  The Court agrees

with the Magistrate Judge that this type of conduct is highly likely to result in death.  (Dkt. 48 at 21-

22).  Plaintiff, whose burden at summary judgment is to show that this was an accident, has cited no

cases supporting a contrary conclusion.[1]

### *Intoxication Exclusion*

Even assuming, *arguendo*, that Mr. McClurg's death resulted from a covered "accident"

under the Policy, the Court adopts the Magistrate Judge's conclusion that coverage is excluded by

the Policy's intoxication exclusion.  Plaintiff has objected to this conclusion.

Defendant has the burden of proving the applicability of an exclusion under the Policy.  The

intoxication exclusion in Mr. McClurg's policy provides: "No benefit will be paid for a Loss caused

or contributed to by: . . . the injured person's intoxication."[2]  (Dkt. 35-2, at H10).  Under the Policy,

intoxication is defined as a blood alcohol content meeting or exceeding "the legal presumption of

---

[1] Plaintiff argues in her objections that Defendant's reliance on *Wickman* is an improper "*post hoc* rationale."  The Court finds no inconsistency between Defendant's current argument and the justification presented by the Plan Administrator, which stated, in part: "We do not interpret the word 'accident' to include circumstances where it is reasonably foreseeable that death will occur . . . . We contend that it was reasonably foreseeable to Mr. McClurg that injury or death would occur if he handled firearms while intoxicated." (Dkt. 35-6 at 3).

[2] The Court recognizes the principle articulated by the Eleventh Circuit in *Hastie v. J.C. Penney Life Ins. Co.*, 115 F.3d 895 (11th Cir. 1997) that when a policy states that an intoxication exclusion will apply merely because the insured was intoxicated at the time of death, the policy will be interpreted, in accordance with Florida law, to require a causal connection between the intoxication and the injury.  Any other interpretation would, as the Eleventh Circuit noted, deliver unreasonable results in cases in which the insured was legally intoxicated (by sedation or otherwise) or was purely the victim of a third party's negligence.  *Id.* at 897.  The policy at issue requires a causal connection, consistent with Florida law.

intoxication under the law of the state where the accident took place." (*Id.*)

Mr. McClurg's autopsy and forensic toxicology lab reports determined that his blood alcohol level was 0.13g/dL and that he "had been consuming alcoholic beverages shortly prior to his death." (Dkt. 35-8, Exh. G. at 6-7). It is undisputed, therefore, that Plaintiff was intoxicated as defined by the Policy, as his blood alcohol content constituted *prima facie* evidence that he "was under the influence of alcoholic benverages to the extent that his . . . normal faculties were impaired." *See* Fla. Stat. § 790.157(c) (blood alcohol content of 0.10 is *prima facie* evidence that a person is under the influence of alcohol for purposes of statute prohibiting use of firearm while under the influence of alcohol); Fla. Stat. § 316.1934(2)(c) (blood alcohol content of 0.08 is *prima facie* evidence that a person is under the influence of alcohol for the purposes of statute prohibiting operation of a motor vehicle while under the influence of alcohol).[3]

Defendant's determination that Mr. McClurg's intoxication affected his "judgment and ability to properly handle his rifle" (Dkt. 35-4, Exh. C at 2) -- and was therefore a contributing cause to his death -- is not *"de novo* wrong." *See Dipper v. Union Labor Life Ins. Co.*, 400 F. Supp. 2d 604, 611 (S.D.N.Y. 2005) (finding sufficient evidence of causation where Plaintiff had a blood alcohol content of .127 and "managed to upend a heavy, six-wheel ATV while driving on a path with no other traffic or distractions").

---

[3] Plaintiff argues in her objections that § 790.157 does not apply to Mr. McClurg because he did not "use a firearm" as required for this section to apply. This contention is contradicted by the autopsy's finding that Mr. McClurg shot himself and the police report's observation of gunpowder residue on Mr. McClurg's right hand. (Dkt. 35-7, at 4). Plaintiff also argues that § 790.157 does not apply to persons who discharge a firearm on "properties expressly approved for hunting by the Fish and Wildlife Conservation Commission or Division of Forestry." Fla. Stat. § 790.15. Plaintiff ignores the fact that this language -- from section 790.15 -- applies only to that section, which prohibits discharge of a firearm in public.

Regardless, the Policy references the blood alcohol content "meeting or exceeding the legal presumption of intoxication." Mr. McClurg's blood alcohol content exceeded the legal presumption of intoxication in Florida.

Moreover, as Defendant noted when making its determination, this is not a case in which the police report suggested another cause.[4] (Dkt. 35-6, Exh. E at 2). *Cf. Hastie*, 115 F.3d at 896 (noting that the accident occurred after the insured's motorcycle collided with a vehicle that had switched into his lane and that the vehicle's driver pled guilty to failure to yield the right-of-way); *Jenkins v. Montgomery Ind. Inc.*, 77 F.3d 740 (4th Cir. 1996) (finding there was insufficient evidence of causation where the intoxicated insured was fatally shot by a third party in a fight). The absence of other causal factors contributing to Mr. McClurg's death supports Defendant's finding that Mr. McClurg's intoxication was a contributing cause of his fatal injury. Defendant has therefore met its burden of showing that the intoxication exclusion applies.

### *Conclusion*

The Court finds that the Magistrate Judge was correct in determining that the Plan Administrator was not "*de novo* wrong" in determining that Mr. McClurg's accident was not covered under the Policy, and that even if it were, the intoxication exclusion applied to exclude coverage. Further, the Court agrees with the Magistrate Judge's determination that even if the Plan Administrator was *de novo* wrong, its conclusions were "reasonable" under a heightened arbitrary and capricious review. (Dkt. 48 at 23, n. 16).[5]

---

[4] Plaintiff argues in her Objections that Defendant's decision was in "bad faith" because Defendant failed to investigate all of the circumstances surrounding McClurg's death. Plaintiff does not elaborate on the nature of these circumstances. To the extent Plaintiff is referring to the statements by Mr. McClurg's friends that he did not appear intoxicated, the Court finds that Defendant properly deferred to the independent, objective autopsy and toxicology reports. *See Sawyer v. Potash Corp. of Saskatchewan*, 417 F. Supp. 2d 730, 741-742 (E.D.N.C. 2006) (finding a toxicology report, standing alone, presents sufficient independent, objective evidence of an insured's intoxication to support a plan administrator's application of an intoxication exclusion under the heightened arbitrary and capricious standard of review).

[5] As the Magistrate Judge concluded, Defendant's decision was not tainted by self-interest because "Hartford has served the goals of the plan by preserving the assets of the fund for 'accidental' deaths that do not result from the voluntary assumptions of known risks by the insured." (Dkt. 48 at 23, n. 16).

After careful consideration of Report and Recommendation and Plaintiff's objections, in conjunction with an independent examination of the file, the Court is of the opinion that the Report and Recommendation should be adopted, confirmed, and approved in all respects. Accordingly, it is

**ORDERED AND ADJUDGED** that

1) The Report and Recommendation (Dkt. 48) is adopted, confirmed, and approved and is made a part of this order for all purposes, including appellate review.

2) Defendant's Motion for Summary Judgment (Dkt. 28) is **GRANTED.**

3) Plaintiff's Motion for Summary Judgment (Dkt. 35) is **DENIED.**

3) All pending motions are **DENIED** as moot.

4) The Clerk is directed to close this case.

**DONE AND ORDERED** in chambers on this 27th day of September, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record